[Civ: No. 2657. Third Appellate District.—December 20, 1923.]

## RANDOLPH MARKETING COMPANY (a Corporation), Appellant, v. G. F. STEVENSON, Respondent.

[1] LANDLORD AND TENANT—ORAL LEASE—FIXTURES—RIGHT OF RE-MOVAL—VOID ASSIGNMENT.—Where a tenant enters into possession of demised premises without any specific agreement as to the term during which the tenancy shall continue, but merely with the oral understanding that the rental shall be a specified sum per year, payable either in cash or in machinery installed in the premises, and thereafter, having occupied the premises for a term of years without paying or offering to pay any cash rental, abandons the premises leaving therein certain machinery and equip-ment claimed by the landlord, and which is affixed to the building by means of bolts and nails, such machinery and equipment become fixtures and, consequently, the property of the landlord; and a subsequent attempted transfer of such machinery and equipment by said tenant to a third person is without legal force against the landlord.

[2] ID.—POSSESSION BY ASSIGNEE—TITLE.—Upon the abandonment of the premises by said tenant the machinery and equipment therein having become the property of the landlord, the act of the assignee of the tenant in subsequently taking possession of the premises and of such machinery and equipment, whether with or without the consent of the landlord, could not have the effect of divesting the latter of his title to the machinery and equipment.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed in part; reversed in part.

65 Cal. App.—1       (1)

The facts are stated in the opinion of the court.

C. W. Braswell for Appellant.

Lamberson & Lamberson for Respondent.

HART, J.—This action is in claim and delivery and is for the recovery of certain packing-house equipment installed by the predecessor in interest of the plaintiff in the packing-house of defendant, situated at Woodlake, Tulare County, designated and known as the "Rose Street Packing House."

The various articles constituting the equipment referred to, according to the complaint and the findings, were: One double-stand grader, together with the partition boards, bins, sprocket wheels, and other attachments; one thirty-inch Miller elevator, five-foot delivery tables; one two-way stem and brushes and floor hopper, shafting and pulleys; one convey press, plain top, two men, with strapping attachment; two No. 18–5–4 Center hanger clamp trucks; one No. 18–4–4 Center spring clamp truck; fifteen plain-top packing stands.

The complaint alleges that, on or about the first day of August, 1919, and a long time prior thereto, the plaintiff was and now is the owner, and entitled to the possession, of said personal property, the same being a complete packing-house equipment, etc.; that said property is of the value of $1,200; that, on or about the first day of August, 1919, without the consent of the plaintiff, and wrongfully, the defendant obtained possession of said property, and, claiming the right to the possession thereof, has refused and still refuses to deliver the same to the possession of the plaintiff; that, prior to the commencement of this action, to wit, on or about the first day of August, 1919, the plaintiff demanded of the defendant the possession of said personal property, but that the defendant refused and still refuses to comply with said demand; that plaintiff, by reason of the alleged wrongful detention of said property by the defendant, has been damaged in the sum of $1,500. The prayer is for a return of said property to the plaintiff or for the recovery of the sum of $1,200, the alleged value thereof, together with damages in the amount stated as the extent of the injury claimed.

The answer, after denying each and all of the allegations of the complaint, sets up a special defense substantially as follows: That the plaintiff leased from defendant the packing-house above referred to at an agreed rental of $360 per year and thereafter placed the personal property mentioned in the complaint in said packing-house and used the said packing-house under said agreement of lease until the month of October, 1916; that during said period of time the plaintiff packed the fruit of this defendant for which the former was paid the current market value; that the plaintiff did not at any time pay to the defendant any rental for the use of said packing-house until said month of October, 1916, and that at said last-mentioned time there was due from plaintiff to defendant for such rental the sum of $1,080; that in the month of October, 1916, plaintiff and defendant entered into an agreement, by the terms of which the said personal property described in the complaint, and the whole thereof, was sold by plaintiff to defendant for and in consideration of the said sum of $1,080, then due from plaintiff to defendant for the said rental of said packing-house as aforesaid, and thereupon and in said month of October, 1916, the said defendant went into possession of the said personal property and the whole thereof and ever since said time has continued to remain in the possession thereof and used the same as his own openly, continuously, and adversely as against the plaintiff "and as against the whole world claimed, occupied and possessed the said personal property and every part thereof with the knowledge, acquiescence and consent of the said plaintiff up to the time of the commencement of this action and for more than three years prior to the commencement of the said action." The answer also sets up the special plea that the action of the plaintiff is barred by the provisions of subdivision 3 of section 338 of the Code of Civil Procedure. The court found that the plaintiff was not the owner or entitled to the possession of the personal property above described; that on or about the first day of August, 1919, the plaintiff demanded of defendant possession of said property and the defendant refused to deliver possession of the same to the plaintiff; that the plaintiff has not been damaged by reason of the detention of said property in any sum whatever or at all; that said action is not barred

by the provisions of subdivision 3 of section 338 of the Code of Civil Procedure; that said property is of the value of $1,000. The findings proceed as follows:

"4. That about the month of September, 1914, the Randolph Fruit Company, a corporation, entered into an oral contract with the defendant, under and by the terms of which the said Randolph Fruit Company placed the said property described in the complaint into a packing-house owned by the defendant, situated near the town of Woodlake, in said County of Tulare, and agreed to pay a rental therefor, and securely attached the said property to said real estate by means of bolts and nails.

"5. That thereafter the Randolph Fruit Company sold its interest in the said property to the Randolph Marketing Company. That there never was any agreement between plaintiff and defendant as to the payment of rent for the said packing-house, or as to the removal of said fixtures or machinery, being the property sued for herein; that said property was so attached as to become a part of the real property upon which said packing-house was situated, and thereupon became and was the property of the defendant.

"6. That neither the Randolph Marketing Company nor the Randolph Fruit Company ever paid any rent for the use of said packing-house.

"7. That about the month of April, 1917, the defendant gave notice to the agent of the plaintiff, that the said defendant would thereafter retain and hold as his own all the said property and the plaintiff did not after the giving of said notice take any steps to secure the possession of said property or make any claim therefor until the commencement of this action."

Judgment was rendered accordingly and the plaintiff appeals therefrom. The contention is that the findings are not supported by the evidence.

Preliminarily to the statement of the facts of the transaction involved herein as shown by the evidence, it should be stated that, as the court found, the Randolph Fruit Company, by an instrument in writing or a bill of sale, through W. O. Randolph, as president, and J. F. Eichar, as secretary thereof, on the first day of March, 1916, transferred and sold to the plaintiff all its packing-house equipments which had been installed and which were then still

maintained in sixteen different packing-houses situated in as many different localities in the southern part of the state. Among the equipments so purported to be transferred to the plaintiff was the one contained in the Rose Street packing-house, as we will hereafter refer to the packing-house in controversy.

The defendant testified that he erected and completed the packing-house in question a short time before the month of September, 1914; that he owned another packing-house on his premises some distance from where the Rose Street packing-house was erected; that there was not enough fruit raised in the immediate neighborhood of the Rose Street packing-house to justify its equipment with the machinery necessary for operating it. The agreement between Randolph, acting for the plaintiff or its predecessor, and the defendant was entirely verbal, no written lease or contract having been executed between the parties; but it appears that at some time prior to the month of September, 1914, and prior to the time at which the equipment was installed, the defendant met W. O. Randolph, the president of the plaintiff and a conversation ensued between the two regarding the operation of the packing-house by the predecessor of plaintiff. The defendant testified that he stated to Randolph that he was willing that his company should take possession of the packing-house, and install the necessary machinery therein and operate the same in consideration of annual rent equal to six per cent on the cost of the packing-house, plus the taxes and insurance, which, the defendant stated, would amount, approximately, to the sum of $330 per year; that he proposed to Randolph that he would accept either cash or any machinery which might be installed in the plant for the purpose of operating it as in payment of rent; that this was, in effect, agreed to by Randolph. At any rate, the plaintiff's predecessor, after said proposition was made by the defendant to Randolph, installed the equipment in the packing-house; that thereupon the predecessor of plaintiff entered into the occupation of the building and operated the plant until the purported transfer by it of the equipment to the plaintiff, on the first day of March, 1916; that on or near the last-mentioned date the plaintiff entered into the possession of the packing-house and operated the plant until the

month of September, 1917, when it ceased further operation of and abandoned the packing-house, leaving in the packing-house, however, the equipment which its predecessor had installed therein, and not paying nor offering to pay the defendant money or cash as in payment of the rent for the use and occupation of the building. From that time until the time of the commencement of this action, to wit, December 19, 1919, the defendant himself operated the packing-house.

[1] The evidence, without conflict, shows that the machinery constituting the packing outfit, with the exception of a few movables, was attached to the building by means of bolts and nails. This machinery consisted of brushes, · shafting, pulleys, elevator, sprocket wheels, the motive power, etc. As to the trucks and other movables connected with the operation of the plant, the defendant's witness, Webb, who was the foreman or overseer of the Rose Street plant while operated by plaintiff and its predecessor, testified that, after the plaintiff had ceased operating the packing-house, he had a conversation with the defendant in which the latter stated that, while he intended to retain the machinery attached to the building as in payment of rent for the use of the house, he claimed no interest in the "packing boxes and the trucks and other movable materials, including the shook, and would like to have it removed as quickly as possible," etc.; that he (Webb) thereupon "loaded up all that stuff including the shook, paper, nails, trucks, stoves, and took the Marketing Company sign down," shipping all said articles to Naranjo, where the plaintiff was interested in a packing-house.

It should be added that there is no evidence of a specific agreement as to the term during which the lease should run, but from the testimony of the defendant that he proposed to the plaintiff's predecessor through its president, Randolph, that the rental would be upon the basis of $330 per year and that the plaintiff entered into the occupation of the building upon that proposition, although not expressly assenting to it, the conclusion or a finding would be justifiable that the term was for one year. Indeed, in the absence of any express agreement as to a determinate period during which the lease was to exist, the presump-

tion would be that the hiring of the property was to be for one year from its commencement, there being no evidence that in the particular locality in which the Rose Street packing-house is situated that there prevails or has prevailed any usage on that subject. (Civ. Code, sec. 1943.) The lease, being verbal, could not be for a longer period than one year. (Civ. Code, sec. 1624, subd. 5.)

As is to be understood from what has already been said, there was no agreement that the Randolph Fruit Company should or might remove the property affixed to the building except upon payment to the defendant of the rental in money. The transaction, therefore, is governed by section 1019 of the Civil Code. (*Merritt* v. *Judd,* 14 Cal. 60; *Pomeroy* v. *Bell,* 118 Cal. 635 [50 Pac. 683]; *Conde* v. *Sweeney,* 16 Cal. App. 157 [116 Pac. 319].) Said section 1019 reads as follows: "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

The situation, as it is presented by this record, is this: That the Randolph Fruit Company abandoned the premises and its right to the further possession thereof during the term of its lease, leaving the property in dispute still attached to the building, without paying or offering to pay the defendant the rental due in money. Under the terms of the agreement, therefore, the equipment, or so much thereof as was attached to the building by means of bolts, screws, and nails, thereupon became fixtures, and, consequently, the property of the defendant. Indeed, since the lease was from year to year, the tenancy of the Randolph Fruit Company was terminated on the expiration of the first year of its lease and by a renewal thereof at that time. With the termination of the lease at the end of the first year, the plaintiff not having paid the defendant the first year's rental in money, the right to remove the fixtures also terminated. (*Merritt* v. *Judd,* 14 Cal. 60; *Marks* v. *Ryan,* 63 Cal. 107; *Carlin* v. *Ritter,* 68 Md. 488 [6 Am. St. Rep. 474, 13 Atl. 370]; *Watriss* v. *First Nat. Bank of Cambridge,* 124 Mass. 578 [26 Am. Rep. 699]; *Sanitary*

*District* v. *Cook,* 169 Ill. 191, 192 [61 Am. St. Rep. 164, 165, 39 L. R. A. 369, 48 N. E. 461].) In view of this conclusion, the attempted transfer of the equipment, or so much thereof as was attached to the building, by the Randolph Fruit Company to the plaintiff was obviously without legal force. The former, under the circumstances, was wholly without authority to make a transfer of that part of the equipment affixed to the building to a third party. [2] The taking of possession of the packing-house by plaintiff through the mere authority of the Randolph Fruit Company without attornment by defendant would be beyond the rights of said company. There was no express consent by the defendant that the plaintiff should take possession of the premises, but, it may be granted, consent may be implied by the silence of the defendant or his failure to object to the plaintiff taking possession, in which case, the plaintiff's tenancy would be by mere sufferance or at will. But, in any event, the mere taking of possession of the packing-house by the plaintiff, whether with the consent of the defendant or not, could not have the effect of divesting the defendant of his ownership of the fixtures, they having become such before such possession was taken. In fact, the plaintiff appears to have recognized the right of the defendant to retain the equipment as fixtures, for, as seen, the latter himself operated the packing-house with the equipment in question for over two years from the time that the plaintiff ceased to operate the packing-house and abandoned the possession and its right to the possession thereof. Indeed, as the findings show, the defendant, in the month of April, 1917, gave notice to the agent of the plaintiff that he would thereafter retain and hold, as his own, the property in question and the plaintiff thereafter took no steps to secure possession of the same, nor did it make any claim of ownership of said property until the commencement of this action.

The foregoing is decisive of the case against the appellant. The findings and the judgment, however, are erroneous in that there are thereby awarded to the defendant, in addition to those articles belonging to the equipment which were attached to the building, a number of movable articles used in connection with the operation of the plant, to wit, several trucks and a number of tables. These

articles were shown by the evidence not to be attached to the building and, of course, they could not become fixtures within the meaning of the law.

The judgment, in so far as it adjudges that part of the equipment which is attached to the building by means of nails and bolts to be fixtures and, therefore, the property of the defendant, is affirmed; and that part of the judgment which awards the defendant the movables mentioned is reversed.

Plummer J., and Finch, P. J., concurred.