HANKINS *v.* LUEBKER.

5-555                                                    274 S. W. 2d 356

Opinion delivered January 10, 1955.

*Coy M. Nixon* and *John Harris Jones,* for appellant.

*Virgil Roach Moncrief* and *John W. Moncrief,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by Appellants, E. H. Hankins and James V. Webb, Jr., to enjoin Appellees, Albert Luebker and Jimmy Tait, from removing three rice well pumping units from certain lands now owned by appellants. Upon a final hearing the Chancellor dissolved a temporary injunction previously issued and decreed that appellees, who had been tenants upon said lands, were the owners of said pumping units and entitled to remove them.

H. M. Core was the owner of 850 acres of rice lands in Jefferson County which he leased to appellees in the spring of 1951. Under the terms of the oral lease, Core was to put down two wells and install pumping units on 400 acres and receive half the rice crop as rental which was on a year to year basis. On the remaining 450 acres, appellees, as tenants, were to construct three wells and install the pumping units involved in this suit and pay Core one-sixth of the rice as annual rental for a three-year term. After leasing the lands to appellees, Core entered into negotiations with the appellants and on March 6, 1952, the parties executed a written contract for the sale of said lands to appellants subject to the oral lease and rent contracts with appellees. Pursuant to said contract, Core and wife executed a warranty deed of said lands to appellants on April 3, 1952. This conveyance also provided: "This deed is made subject to rent and lease contracts heretofore made by grantors with Albert Luebker and Jimmy Tait."

Upon expiration of the three-year oral lease between Core and appellees, appellants brought the instant suit claiming that the three pumping units were fixtures and a part of the free-hold estate which passed to them under the deed from H. M. Core and Wife. On the other hand appellees contended that the pumping units were installed by them under an express agreement with their landlord, Core, that said pumps should remain the prop-

·erty of appellees, who would have the right to remove them at the expiration of the three-year term; and that such agreement and provision of said oral lease. were made known to and fully concurred in by appellants at the time of their purchase of the lands in 1952.

It is clear that appellants took title to the lands in question subject to the oral lease contract subsisting between their grantors, H. M. Core and Wife, and the appellees. It is also undisputed that, at the time of purchase, appellants knew that the oral lease was for a three-year term and that they had discussed other provisions of said lease with their grantors and the appellees prior to their purchase of the property which was then in the possession of the appellees. According to the testimony of H. M. Core and Mrs. Core, they had conversations with the appellants immediately prior to the execution of the contract of sale and deed in which conversations appellants were fully advised that, under the terms of the oral lease, the three pumping units were to remain the personal property of appellees with the right ·of removal at the end of the three-year term but subject to the prior right of Core to purchase them if appellees chose to sell at the end of the term. These discussions took place at Core's home and a bank at England, Arkansas. Similar discussions took place at the American Gin in England with appellees present and all the interested parties concurring. While appellants admitted that the terms of the oral lease were discussed at these meetings, they stoutly denied knowledge of any provision relating to the pumping units and stated that nothing was said about the ownership of said units.

At the time of the filing of the instant suit, appellees had already removed one of the pumping units to a mortgaged tract from which it had been taken when it was first installed on the Core property. Appellees also executed a mortgage to the Bank of England, Arkansas, in 1952 which included the other two pumping units along with other farming equipment which they owned at that time. There was other testimony which tended to cor-

roborate each of the conflicting versions given by the parties and their supporting witnesses.

Appellants cite *Hachmeister* v. *Power Mfg. Co.,* 165 Ark. 469, 264 S. W. 976, and *Boston Mutual Ins. Co.* v. *Power Mfg. Co.,* 182 Ark. 374, 31 S. W. 2d 541, in support of their contentions that the pumping units were fixtures which could not be reserved under the oral lease agreement between Core and the appellees. In these cases the engines of pumping units somewhat similar to those in the instant case were held to be fixtures under the circumstances there presented, but questions concerning a reservation or severance of said fixtures by agreement between landlord and tenant were not involved. The case of *Dent* v. *Bowers,* 166 Ark. 418, 265 S. W. 636, 36 A. L. R. 443, also relied on by appellants, involved the conveyance of a lot being used as a filling station to Dent, and Bowers claimed ownership of a certain gasoline pump and tank by purchase from a former tenant of the property. Again the conveyance was absolute on its face and contained no exception, reservation or notice such as that involved in this case relative to the oral lease between Core and appellees. In holding that the filling station was a fixture which passed by the deed to Dent, the Court pointed out that the grantor and Dent could have agreed, when Dent purchased the lot, that the filling station was personal property which did not pass with the deed, but the Court found no evidence of any such contract between them.

In the instant case the Chancellor did not find it necessary to determine the exact status of the pumping units in question, and neither do we. Even if said units should be held to be fixtures in the first instance, still it was competent for the parties to agree that they should remain the property of the appellees. It is well settled by our own cases and the authorities generally that parties may treat as personal property machinery or improvements which would otherwise be a part of the realty, and, thus convert it into personal property as between themselves. Thompson on Real Property, Sec. 191; 36 C. J. S., Fixtures, Sec. 21 e(1) 22 Am. Jur., Fixtures, Sec. 17. Where a lease contract reserves in the

lessee a right to the removal of any buildings erected by him on the leased premises, such buildings remain the lessee's personal property and do not become a part of the realty. *Buffalo Zinc & Copper Company v. Hale,* 136 Ark. 10, 206 S. W. 661. It is also well settled that where fixtures have been severed from the land by agreement of the parties, a subsequent grantee with notice takes subject to such agreement. Thompson on Real Property, Sec. 195; 22 Am. Jur., Fixtures, Sec. 18.

It is true that the contract of sale and conveyance between Core and appellants did not specifically provide that the pumping units should remain the property of appellees, but both documents did provide that appellants should take title subject to the terms of the oral lease contract subsisting between H. M. Core and the appellees. In this connection we cannot agree with the argument that the admission of testimony relative to the terms of said oral lease was in violation of the parol evidence rule. The effect of this evidence was to explain rather than contradict the provisions of the contract of sale and deed from Core and Wife to the appellants.

It is also contended that the Chancellor erroneously ruled that the burden was upon appellants to disprove that there was any reservation of the pumping units as fixtures. Appellants do not point out in their abstract and brief the making of such ruling and our inspection of the record has not disclosed it.

On the whole case we hold that a preponderance of the evidence supports the Chancellor's conclusion that there was a valid agreement between Core and appellees that the pumping units should remain the personal property of appellees with the right of removal at the termination of the oral lease; and that appellants took title to the lands in question with full knowledge of, and subject to, the terms of such agreement. The decree is accordingly affirmed.