Elmond LUNDGREN and Estelle Lundgren, Plaintiffs and Appellants,

v.

Donald MOHAGEN, Loren W. Mattern and Citizen's State Bank of Mohall, Defendants and Appellees.

Civ. No. 870374.

Supreme Court of North Dakota.

July 19, 1988.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiffs and appellants; argued by Russel G. Robinson.

Bosard, McCutcheon & Rau, Ltd., Minot, for defendant and appellee Donald Mohagen; argued by Gary H. Lee.

Eaton, Van de Streek & Ward, Minot, for defendant and appellee Loren W. Mattern; argued by Bruce A. Schoenwald.

John S. Steinberger, Jr., Kenmare, for defendant and appellee Citizen's State Bank of Mohall. Submitted on brief; no appearance.

ERICKSTAD, Chief Justice.

Elmond and Estelle Lundgren appeal from a judgment in which the district court concluded that a concrete ready-mix batch plant and a residential mobile home were personal property and therefore were not subject to real estate mortgages previously foreclosed by the Lundgrens. We affirm.

In 1972 the Lundgrens sold the assets of their concrete ready-mix business and real estate upon which the business was located to a partnership consisting of Donald Mo-

hagen and Loren Mattern. The transfer documents were prepared by the parties' attorneys and included a warranty deed for the real estate and a bill of sale for the personal property. The bill of sale transferred ownership of "goods, chattels and personal property" including one 1963 Winslow six-yard concrete batcher with dial scale and conveyor and one Blaw Knox 235 barrel cement silo. Those items constitute the component parts of the ready-mix batch plant.

Mohagen and Mattern obtained financing for part of the purchase price with a loan from the Small Business Administration (SBA). SBA took a first mortgage on the real estate and a security interest in the business's accounts receivable. The Lundgrens also financed part of the sale, taking a second mortgage on the real estate.

In 1975 Mohagen sold his interest in the partnership to Mattern. In 1983, with the consent of SBA, Mattern sold the plant equipment, including the batch plant, back to Mohagen but retained ownership of the real property. Mohagen obtained financing for the purchase from the Citizen's State Bank of Mohall which took a security interest and filed a personal property financing statement covering the batch plant. Mohagen began to operate the ready-mix business on the original site but Mattern retained responsibility for satisfying the existing mortgage and debt with SBA and the Lundgrens. When Mattern failed to make payments and SBA threatened to foreclose on its first mortgage, the Lundgrens took an assignment of SBA's first mortgage and foreclosed both the first and their second mortgage, obtaining a sheriff's deed to the real estate on August 7, 1987.

Thereafter the Lundgrens commenced this action to obtain a declaratory judgment that the batch plant and Mattern's mobile home on the premises at the time of the foreclosure action were real estate subject to their foreclosure. Mohagen claimed ownership of the batch plant as personal property not covered by the real estate mortgages, and the Citizen's State Bank of Mohall claimed a security interest in the batch plant. Mattern claimed ownership of the mobile home as personal property not covered by the real estate mortgages.

After a bench trial, the district court determined that the batch plant and the mobile home were personal property and not subject to the mortgage foreclosure action. The district court therefore concluded that the Lundgrens had no right, title, or interest in that property. The Lundgrens have appealed.

The Lundgrens contend that the trial court erred in concluding that the batch plant and mobile home were personal property and not realty. They argue that the trial court failed to follow North Dakota law on fixtures in concluding that the batch plant was personal property solely on the "intention of the parties." They assert that pursuant to Section 47–01–05, N.D. C.C.,[1] the intention of the parties is not dispositive of whether something is a fixture to real estate.

In *Strobel v. Northwest G.F. Mutual Insurance Co.*, 152 N.W.2d 794, 796 (N.D. 1967), we said:

"[I]n making a determination as to whether personal property became a fixture under the statute [Section 47–01–05, N.D.C.C.], the court will look to the intention of the person making the annexation, the manner in which the building is annexed, and its adaptation to the use of the realty. We have also held that by agreement of the parties interested, buildings located upon land may be considered personal property. *Kittelson v. Collette*, 61 N.D. 768, 240 N.W. 920; *Newell v. McMurray*, 51 N.D. 901, 201 N.W. 845; *Mathews v. Hanson*, 19 N.D. 692, 124 N.W. 1116."

1. Section 47–01–05, N.D.C.C., provides:

"*47–01–05. 'Fixtures' defined.*—A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

■ Thus, notwithstanding the physical characteristics of a fixture, the parties may agree that it is personal property. Such an agreement between the parties follows the well-established principle that when an owner of real estate and fixtures sells the fixtures apart from the real estate, a constructive severance occurs and the fixtures become items of personal property. *E.g. Soule et al. v. First National Bank of Fort Smith,* 202 Ark. 326, 150 S.W.2d 204 (1941); 35 Am.Jur.2d, Fixtures § 27. However, such an agreement is not binding upon subsequent purchasers or mortgagees in good faith, without notice of the agreement. *Hasse v. Dewitz,* 76 N.D. 108, 33 N.W.2d 625 (N.D.1948). Conversely, a subsequent purchaser or mortgagee who joins in or has notice of the agreement is ordinarily bound thereby. *Russell v. Golden Rule Mining Co.,* 63 Ariz. 11, 159 P.2d 776 (1945); *Hankins v. Luebker,* 224 Ark. 425, 274 S.W.2d 356 (1955); *see* 35 Am.Jur.2d, Fixtures § 18.

The trial court made the following findings of fact and conclusions of law:

"As part of their [1972] transaction, plaintiffs gave Mattern and Mohagen a bill of sale which transferred ownership of 'goods, chattels and personal property' including one 1963 winslow six-yard concrete batcher with dial scale and conveyor, and one Blaw Knox 235 barrel cement silo, the component parts which together constitute what is referred to here as the redi-mix batch plant.

\* \* \* \* \* \*

"It is clear from the documents reflecting the 1972 transaction that it was the intention of the parties to treat the redi-mix batch plant components as personal property; this Court therefore concludes that they are personal property as between the plaintiffs and the defendants for purposes of this lawsuit."

■ The trial court's determinations demonstrate that it found that the "intention of the parties" was that the Lundgrens, Mohagen and Mattern agreed to treat the batch plant as personal property thereby constituting a constructive severance. Although the transfer documents were prepared by the parties' attorneys, both Mohagen and Mattern testified at trial that they intended the batch plant to be transferred as personal property and that the attorneys drafted the documents to reflect that intent. Additionally, the Lundgrens prepared a financing statement listing the equipment, including the batch plant, and filed that financing statement with the secretary of state. Section 41–09–40(1)(b) [U.C.C. § 9–401(1)(b)], N.D.C.C., requires a financing statement for fixtures to be filed "in the office where a mortgage on the real estate concerned would be filed...." If the Lundgrens regarded the batch plant as a fixture the proper place to file would have been with the register of deeds. We believe their failure to so file further evidences the parties' agreement that the batch plant was personal property. The finding of an agreement between the parties is not contrary to caselaw interpreting Section 47–01–05, N.D.C.C., and is not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.

Moreover, this record does not establish that the Lundgrens obtained any greater rights when SBA assigned its first mortgage to them. The assignment from SBA to the Lundgrens which was introduced at trial covered only SBA's interest in accounts receivable. SBA's first mortgage was entered into contemporaneously with Lundgrens' sale of the ready-mix business to the partnership, including the execution of the bill of sale listing the batch plant as personal property. Mattern testified that SBA was aware of the items listed in the bill of sale. Mattern also testified that when he sold the equipment to Mohagen in 1983, he contacted SBA and it allowed him to sell what it termed "personal property equipment" which included the batch plant, but not the realty. Under those circumstances we believe that the trial court could have reasonably concluded that SBA had knowledge of the parties' agreement to treat the batch plant as personal property. Accordingly, we conclude the trial court did not err in determining that the batch plant was personal property because of the constructive severance.

The Lundgrens next assert that the trial court erred because it overlooked certain evidence that the residential mobile home belonging to Mattern was realty. The mobile home was not part of the 1972 transaction between the Lundgrens and Mattern and Mohagen. Instead it was brought on the premises by Mattern after that transaction.

The trial court made the following findings:

"In 1972 defendant Mattern moved a 1972 fourteen by seventy foot Marshfield mobile home onto the plant premises to use as a home. In the early 1980's that home was removed and replaced with a 1974 fourteen by sixty-eight foot Adrian mobile home, which itself was later removed from the premises.

"Neither of these mobile homes was ever permanently attached to the premises; both were simply blocked and leveled on concrete blocks and wooden shims.

\* \* \* \* \* \*

"Plaintiffs have failed to prove that the mobile home in question was ever permanently affixed to the premises in question."

After reviewing the record we are not left with a definite and firm conviction that the trial court made a mistake in determining that the mobile home was never permanently affixed to the premise and was therefore personal property. Accordingly, the trial court's findings about the mobile home are not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.

The district court judgment is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.